IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MAY SESSION, 1999

FILED

September 9, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9805-CC-00230 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | MOORE COUNTY |
| VS. | ) | |
| | ) | HON. CHARLES LEE |
| BETTY W. NORMAN, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Class E Felony |
| | ) | & Class A Misdemeanor) |

FOR THE APPELLANT:

CLIFTON N. MILLER
Henry, McCord, Bean & Miller
300 North Jackson Street
Tullahoma, TN  37388

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

MIKE MCCOWEN
District Attorney General

CHARLES CRAWFORD
Assistant District Attorney
P. O. Box 878
Fayetteville, TN  37334

OPINION FILED _____

CONVICTIONS FOR RECKLESS ENDANGERMENT COUNT ONE AND
TWO MERGED; AFFIRMED AS MODIFIED

JERRY L. SMITH, JUDGE

# OPINION

The appellant, Betty W. Norman, was convicted by a Moore County jury of two (2) counts of reckless endangerment, a Class E felony, and one (1) count of harassment, a Class A misdemeanor. The trial court sentenced the appellant as a Range I offender to consecutive terms of one (1) year and three (3) months and one (1) year and two (2) months for the reckless endangerment convictions. The appellant received a concurrent sentence of six (6) months for her conviction for harassment. The trial court ordered that the appellant serve her sentences in confinement. On appeal, the appellant presents the following issues for our review:

> (1) whether the trial court erred in limiting the appellant's cross-examination of a state witness regarding the trajectory of a bullet and by subsequently instructing the jury to disregard the witness' testimony regarding the trajectory of the bullet;
>
> (2) whether the trial court erred in failing to allow the appellant to question the victims, Robert and Loretta Norman, regarding any domestic problems between them;
>
> (3) whether the evidence was sufficient to support the appellant's convictions beyond a reasonable doubt;
>
> (4) whether the trial court imposed excessive sentences;
>
> (5) whether the trial court erred in imposing consecutive sentences; and
>
> (6) whether the trial court erred in denying probation.

After a thorough review of the record before this Court, we conclude that the appellant was erroneously convicted of two (2) counts of reckless endangerment arising out of the same course of conduct. Therefore, the appellant's conviction for reckless endangerment in Count One is merged with her conviction for

reckless endangerment in Count Two. In all other respects, however, the judgment of the trial court is affirmed.

## FACTS

The appellant was previously married to the victim, Robert Norman, and they had two (2) sons, Derrick, age thirteen (13) at the time of trial, and Michael, eight (8) years of age at the time of trial. Since their divorce in 1992, the appellant and Robert Norman had appeared in Chancery Court on several occasions as a result of disputes over custody of their children. In 1997, Robert Norman had custody of the children, but the appellant had visitation every Sunday. In addition, Robert Norman had remarried, and the appellant and Robert's present wife, Loretta, exhibited an obvious dislike for one another.[1]

At approximately 1:30 a.m. on July 11, 1997, Robert and Loretta Norman were sleeping in their home when the telephone rang. Loretta answered the phone, but hung up because there was no one on the other end of the line. The phone rang a second time, but neither Robert nor Loretta answered it. When the phone rang the third time, Loretta answered the phone and heard someone saying, "what are you doing now?" Robert picked up another extension of the phone and heard a woman saying, "doing." Both Robert and Loretta identified the caller as the appellant. Additionally, the Caller ID box attached to the Normans' telephone identified the phone number of the incoming calls. The calls came from the appellant's residence in Pelham, Tennessee. However, only two

---

[1] The animosity between the women had culminated into a previous incident whereby the appellant struck Loretta in the head with a baseball bat. The appellant was convicted of simple assault as a result. The appellant and Loretta had been ordered by the Chancery Court to have no contact with one another.

(2) telephone calls registered on the Caller ID box, one at 1:28 a.m. and the other at 1:29 a.m.

On August 2, the appellant and the Normans were involved in a confrontation which took place at Michael Norman's baseball game in Murfreesboro. Robert and Loretta brought Derrick and Michael to Murfreesboro for Michael's game. The appellant arrived soon thereafter and attempted speak with Derrick, but Derrick did not wish to talk to his mother. The appellant continued her efforts for several minutes, but Derrick continued to ignore her. Robert looked at the appellant and stated, "[c]an't you see that he doesn't want to talk to you or see you?" The appellant then pointed at Loretta and proclaimed in a loud voice, "I'm going to beat the hell out of her."

After the game concluded, the appellant attempted to take pictures of Michael, but because Robert and Loretta wanted to go home, they would not allow her to take pictures of her son. The appellant grabbed Michael's arm and stated, "he is coming with me." Loretta grabbed Michael's other arm. Eventually, the appellant released Michael's arm but followed Robert, Loretta and the boys as they walked to their car. The appellant's actions frightened the Normans, and they contacted security for a police escort from the baseball field.

The next day, the appellant was scheduled to have visitation with her sons. However, because Michael was limping due to an injury sustained at the baseball game on the previous day and because Derrick was experiencing a severe headache, Robert decided it was not a good day for visitation. When Robert telephoned the appellant to inform her that he would not bring Derrick and Michael for the weekly visitation, the appellant demanded that he bring them. Robert refused.

Later that afternoon, at approximately 4:15 p.m., Robert was relaxing in his home when he heard his dog barking. He heard the doorbell ring, and because he was not dressed, walked into another room looking for clothes. Loretta walked into the room and informed him that the appellant was at the front door. Robert walked to the telephone and, as he passed by the front door, saw the appellant standing at the door wearing a purple bathing suit. Robert called 911, and he and his sons went into the closet of the master bedroom. Loretta walked into the kitchen to lock the door leading to the garage and heard the appellant standing outside of this door yelling for Robert. As she turned to walk out of the kitchen, Loretta heard a gunshot. She ran into the bedroom, and Robert called 911 again. After the police arrived, the Normans observed that the deadbolt lock on the door leading to their kitchen had been shot.

The police did not collect any evidence on August 3, but the next day Loretta discovered a red plastic shotgun shell casing in her garage and gave it to her husband. Robert subsequently turned the shell casing, along with the deadbolt and bullet fragments, over to the police. However, the police subsequently misplaced this evidence.

The appellant was subsequently arrested and indicted with two (2) counts of aggravated assault[2] for the August 3 incident and one (1) count of harassment for the July 11 incident.

At trial, the defense called David Vaughn of the Ben Lomand Rural Telephone Co-op in McMinnville to testify. Vaughn produced copies of phone bills from the residence of Gladys Sartain, the appellant's mother, with whom the appellant had been residing. The bills indicated only one call to the Norman

---

[2] One count charged the appellant with the aggravated assault of Robert Norman on August 3, and the other count charged her with the aggravated assault of Loretta Norman on August 3.

residence on July 11, 1997, at 1:29 a.m. Vaughn testified that every outgoing long distance call that is answered is recorded on these records. However, he acknowledged that if a phone call is not answered, there is no record of the call on the phone bill.

The appellant attempted to establish an alibi for her whereabouts on the afternoon of August 3. Wendee Partin, a clerk at a FINA station in Pelham, testified that she was working on August 3 when the appellant came into the service station between 3:00 p.m. and 4:00 p.m. When the appellant walked through the door, she appeared as if she might faint. The appellant, who suffered from seizures, fell to the floor and asked Partin to call Dale Perry, the appellant's brother-in-law. Because she had other customers to attend, Partin summoned her friend, Chris Davidson, to assist the appellant. Davidson attempted to rouse the appellant, and the appellant asked him to call Perry. Davidson complied, and Perry arrived shortly thereafter. Perry helped the appellant to his car and then drove her to her residence. Perry stayed with the appellant for approximately thirty (30) minutes and returned home around 6:00 p.m. The appellant's mother, Gladys Sartain, testified that she and the appellant remained at home for the rest of the evening.

Perry testified that, driving the speed limit, it takes approximately forty-six (46) minutes to drive from the FINA station to Robert Norman's house in Moore County.

The jury returned guilty verdicts for the lesser offense of felony reckless endangerment in Count One and Count Two. The jury also found the appellant guilty of harassment as charged in Count Three of the indictment. The trial court sentenced the appellant to consecutive terms of one (1) year and three (3) months and one (1) year and two (2) months for the appellant's convictions for

reckless endangerment. These sentences were ordered to run concurrently with a six (6) month sentence for harassment. From her convictions and sentences, the appellant now brings this appeal.

## TESTIMONY CONCERNING BULLET TRAJECTORY

In her first issue, the appellant argues that the trial court improperly restricted the cross-examination of Moore County Sheriff's Deputy Michael Blackburn regarding the trajectory of the bullet in the deadbolt lock. She further claims that the trial court erred in subsequently instructing the jury to disregard Officer Blackburn's testimony concerning the trajectory of the bullet. The appellant contends that the proposed testimony regarding the trajectory of the bullet was admissible as lay testimony under Tenn. R. Evid. 701 because it was based upon Blackburn's observations of the bullet.

During the state's examination of Officer Blackburn, he testified that "the person who shot the door knob had to be standing up on the porch because the projectory [sic] of the bullet was kind of downward." When defense counsel attempted to cross-examine Officer Blackburn on this statement, the state objected. The trial court sustained the objection, finding that "the angle and trajectory of a bullet normally requires expert opinion," and because Officer Blackburn was not qualified as an expert, his opinion regarding the trajectory of the bullet was inadmissible. When counsel attempted to resume questioning Blackburn, the trial court interjected:

> Counsel for the defense is partially correct. It would not be proper for the State to ask a person an opinion then object to that same opinion being asked about. Consequently the Court is going to sustain the State's objection. The jury shall disregard any statements this witness made about any opinions concerning this

bullet. He is not an expert. The Court will strike that testimony as offered by the State since the State is not objecting to the same testimony being offered. The jury will disregard and consider for no purpose this witness's opinions concerning any trajectory evidence concerning this travel of bullet. That is an opinion that only an expert can testify to and this person was not qualified as an expert.

"Questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court, whose ruling will not be overturned in the absence of abuse or arbitrary exercise of discretion." State v. Begley, 956 S.W.2d 471, 475 (Tenn. 1997). The admission of expert testimony is governed by Tenn. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Evidence is "scientific technical or other specialized knowledge" if "it concerns a matter that 'the average juror would not know, as a matter of course. . . .'" State v. Murphy, 953 S.W.2d 200, 203 (Tenn. 1997) (quoting State v. Bolin, 922 S.W.2d 870, 874 (Tenn. 1996)).

We agree with the trial court that testimony concerning the trajectory of a bullet ordinarily requires expert testimony. *See* State v. Tiffany Lafonzo Betts, C.C.A. No. 02C01-9709-CC-00337, 1999 Tenn. Crim. App. LEXIS 73, at *4, Madison County (Tenn. Crim. App. filed January 29, 1999, at Jackson) (holding that testimony concerning the mechanics of a shotgun "would have been appropriate only from an expert on firearms"). Because Officer Blackburn was not qualified as an expert in this regard, the trial court properly sustained the state's objection to this testimony on cross-examination. Furthermore, the trial court properly instructed the jury to disregard Officer Blackburn's statement on direct examination concerning the bullet's trajectory.

We reject the appellant's contention that the state's objection to the testimony on cross-examination was improper because the state effectively "opened the door" to such testimony by directly eliciting the trajectory testimony on direct examination. The prosecutor asked Officer Blackburn, "[d]o you remember seeing anything on top of the door facing on the outside --". Blackburn responded, "[n]ot that I remember. The only thing -- when I looked at the door the person who shot the door knob had to be standing up on the porch because the projectory [sic] of the bullet was kind of downward." Clearly, the portion of Blackburn's answer referring to the bullet's trajectory was not responsive to the question posed by the prosecutor. Thus, we disagree with the appellant that the state directly elicited this response from Blackburn.

The testimony concerning the trajectory of the bullet required expert testimony, and Blackburn was not qualified as an expert to testify in this regard. As such, the trial court acted properly in instructing the jury to disregard the improperly admitted testimony and in refusing to allow any further testimony on the subject.

This issue is without merit.

## CROSS EXAMINATION OF VICTIMS

In her next issue, the appellant asserts that the trial court erred in failing to allow defense counsel to cross-examine Robert and Loretta Norman concerning any domestic relations problems between them. The appellant claims that evidence of the Normans' marital problems would indicate that the parties were biased against her. Thus, she argues that the evidence was properly admissible under Tenn. R. Evid. 616. We must disagree.

Other than the appellant's allegations, there is no evidence in the record that Robert and Loretta, in fact, had martial problems. In any event, evidence that Robert and Loretta Norman had marital difficulties does not indicate that they were biased against the appellant. Furthermore, any domestic disputes between the Normans are irrelevant to whether the appellant committed the instant offenses. *See* Tenn. R. Evid. 401. The trial court did allow defense counsel to question both Robert and Loretta as to whether either of them was responsible for shooting the door on August 3.

The admissibility of testimony as well as the scope of direct and cross-examination is a matter within the sound discretion of the trial court. *See* State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994). Furthermore, a trial court's determination of relevancy is subject to an abuse of discretion standard. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). The trial court restricted the appellant's cross-examination of the victims in this regard because it found the evidence to be irrelevant and unduly prejudicial and confusing to the jury. *See* Tenn. R. Evid. 403. The trial court did not abuse its discretion by refusing to allow the victims to be cross-examined regarding alleged martial difficulties.

This issue has no merit.

## SUFFICIENCY OF THE EVIDENCE

The appellant challenges the sufficiency of the evidence for her convictions. First, she claims that the evidence is insufficient to support her convictions for reckless endangerment because no one observed her shooting the door to the Norman residence and because she presented evidence of an alibi on the afternoon of August 3. With respect to the harassment conviction she

contends that under State v. Hoxie, 963 S.W.2d 737 (Tenn. 1998), to establish the offense of harassment, the state is required to prove that she placed more than one telephone call in a repetitious manner. As a result, she insists that because the telephone records reveal that only one call was placed to the Norman residence on the morning of July 11, the appellant cannot be found guilty of harassment.

## A. Standard of Review

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

It is well-settled that a criminal offense may be established exclusively by circumstantial evidence. State v. Lequire, 634 S.W.2d 608, 614 (Tenn. Crim. App. 1981); State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983). Further, to support a conviction based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state

-11-

the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the jury as the trier of fact. State v. Tuttle, 914 S.W.2d at 932.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

### B. Reckless Endangerment

The appellant contends that the evidence was insufficient to sustain her convictions of reckless endangerment because no one saw her shoot the door to the Norman residence and none of the state's witnesses saw her with a gun. Furthermore, she argues that she presented more than substantial proof of an alibi for the afternoon of August 3.

An accused commits the offense of reckless endangerment when he or she "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). When reckless endangerment is committed with a deadly weapon, the offense is a Class E felony. Tenn. Code Ann. § 39-13-103(b).

-12-

The evidence at trial showed that the appellant was observed by Robert, Loretta, Derrick and Michael Norman ringing the doorbell at the Norman residence on the afternoon of August 3. Due to their previous confrontations with the appellant, Robert Norman called 911 and took his sons into a bedroom closet. Loretta walked into the kitchen to lock the door leading into the garage and heard the appellant standing outside of the door yelling Robert Norman's name. She testified that approximately 2 to 3 seconds after she heard the appellant's voice, she heard a gunshot.

Although no one actually observed the appellant shoot the door, a rational trier of fact could conclude that the appellant was the shooter. By shooting the door, the appellant recklessly engaged in conduct which placed the Normans in imminent danger of death or serious bodily injury. Moreover, while the appellant presented evidence of an alibi, four witnesses testified that the appellant was at the Norman residence on the afternoon of August 3. By their verdict of guilt, the jury obviously accredited the testimony of the state's witnesses. It is well-settled that the jury, as the trier of fact, resolves questions regarding the credibility of the witnesses. State v. Maddox, 957 S.W.2d 547, 556 (Tenn. Crim. App. 1997). The evidence was sufficient to convict the appellant of reckless endangerment.

Although not raised by the appellant nor the State of Tennessee, this Court notes that the appellant has two (2) convictions for reckless endangerment as a result of her shooting the door at the Norman residence. However, this Court has held that the act of firing a single shot constitutes only one (1) act of reckless endangerment, regardless of the number of victims endangered. State v. Donnie Webb, C.C.A. No. 03C01-9112-CR-00414, 1996 Tenn. Crim. App. LEXIS 200, at *1, Cocke County (Tenn. Crim. App. filed March 29, 1996, at Knoxville); *see also* State v. Ramsey, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995) (holding

that one act of reckless driving does not justify multiple convictions for reckless endangerment even though the defendant endangered multiple victims). In this case, the appellant was convicted for firing a single shot into the door at the Norman residence, and only one (1) conviction for reckless endangerment was, therefore, proper. As a result, the appellant's conviction for reckless endangerment in Count Two is vacated and merged into the appellant's conviction for reckless endangerment in Count One.

### C. Harassment

The appellant also contends that the evidence does not support her conviction for harassment. She asserts that the Tennessee Supreme Court has held that the offense of harassment requires proof of more than one phone call in a repetitious manner. *See* State v. Hoxie, *supra*. Because the telephone records only indicate one phone call to the Norman residence on July 11, the appellant argues that the evidence is insufficient to support the jury's finding of guilt for this offense. Furthermore, she claims that any phone call made to the Norman residence was accidental; therefore, there is no evidence that the appellant knowingly annoyed or alarmed the recipient of the phone calls.

A person commits the offense of harassment who intentionally "[p]laces one (1) or more telephone calls anonymously, or at an inconvenient hour, or in an offensively repetitious manner, or without a legitimate purpose of communication, and by this action knowingly annoys or alarms the recipient." Tenn. Code Ann. § 39-17-308(a)(2).

The appellant claims that under State v. Hoxie, 963 S.W.2d 737 (Tenn. 1998), the state is required to prove more than one telephone call in order to establish the offense of harassment. However, the appellant's reliance on Hoxie is misplaced.

In Hoxie, the Supreme Court decided the issue whether the state is required to make an election of offenses at the close of its proof with regard to the offense of stalking. Id. at 741. The Court held that no election is required due to the nature of the stalking offense as a "continuing course of conduct." Id. at 743. The Court further added, "[l]ikewise, the offense of telephone harassment for which the defendant was convicted contemplates a continuing course of conduct. . . . The offense of harassment itself requires more than one telephone call or telephone calls in a repetitious manner." Id.

We do not agree with the appellant's interpretation of Hoxie as requiring the state to present evidence of more than one phone call to establish the offense of harassment under Tenn. Code Ann. § 39-17-308. Although the Court's opinion states, "[t]he offense of harassment itself requires more than one telephone call or telephone calls in a repetitious manner," this statement contradicts the clear language of the statute. Under Tenn. Code Ann. § 39-17-308(a)(2), an accused commits the offense of harassment by placing "one (1) or more telephone calls . . ."

Moreover, in Hoxie, the Supreme Court was faced with the issue whether the state is required to elect offenses for the offense of stalking. The issue of election of offenses with regard to the offense of harassment was not before the Court; therefore, the statement that harassment "requires more than one telephone call" was only dicta and, as a result, not binding as precedent. "Court decisions must be read with special reference to the questions involved and necessary to be decided, and language used which is not decisive of the case or decided therein is not binding as precedent." Shepherd Fleets, Inc. v. Opryland, U.S.A., 759 S.W.2d 914, 921-22 (Tenn. Ct. App.), *perm. to app. denied* (Tenn. 1988).

In any event, we conclude that the state presented sufficient evidence that the appellant placed one (1) or more telephone calls at an inconvenient hour and in an offensively repetitious manner. Robert and Loretta Norman testified that the telephone rang three (3) times at approximately 1:30 a.m. on July 11, 1997. When Loretta answered the phone on the first ring, there was no one on the other end of the line. The phone rang a second time, but neither Robert nor Loretta answered it. When the phone rang the third time, Loretta answered the phone and heard someone saying, "what are you doing now?" Robert picked up another extension of the phone and heard a woman saying, "doing." Both Robert and Loretta identified the caller voice as that of the appellant. In addition, the Caller ID box attached to the Norman's telephone identified the appellant's phone number as the origin of two (2) of the incoming calls.

Although David Vaughn of the Ben Lomand Rural Telephone Co-op testified that the phone records indicated only one (1) phone call to the Norman residence on the morning of July 11, he acknowledged that the records would not indicate a phone call that was not answered. It was a question for the jury, as trier of fact, to resolve whether the appellant made multiple phone calls to the Norman residence on July 11.

The appellant further claims that there is no evidence that she "knowingly" annoyed or alarmed the Normans because the evidence demonstrates that the phone calls were accidental. To the contrary, there was no evidence presented at trial that the appellant accidentally called the Norman residence multiple times in the early morning hours of July 11. The evidence demonstrated that the appellant made telephone calls to the Norman residence at an hour in which they would obviously be asleep. According to the Normans, she called three (3) times within a two-minute period. After thoroughly reviewing the evidence presented

-16-

at trial, we conclude that a rational trier of fact could have found that the appellant placed one or more telephone calls to the Norman residence at an inconvenient hour and in an offensively repetitious manner and by her actions knowingly annoyed or alarmed the recipient of the telephone call.

This issue has no merit.

## SENTENCING ISSUES

The appellant claims that the trial court erred in imposing her sentences. First, she claims that the trial court misapplied one enhancement factor and failed to apply a mitigating factor in determining her sentence; as a result, she argues that her sentences are excessive. She further asserts that the trial court erred in imposing consecutive sentences.[3] Finally, she contends that the trial court erred in denying probation.

### A. Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

---

[3] The trial court imposed consecutive sentences as to Counts One and Two only. Because this Court has determined that the appellant's convictions for reckless endangerment in Counts One and Two should merge into one (1) conviction, we need not address the appellant's argument with regard to consecutive sentencing.

-17-

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing;
>
> (2) [t]he presentence report;
>
> (3) [t]he principles of sentencing and arguments as to sentencing alternatives;
>
> (4) [t]he nature and characteristics of the criminal conduct involved;
>
> (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
>
> (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the 1989 Sentencing Act, the presumptive sentence is the minimum within the applicable range if no mitigating or enhancement factors for sentencing are present. Tenn. Code Ann. § 40-35-210(c); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as its findings are supported by the record. State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

### B. Trial Court's Findings

In determining the appellant's sentence, the trial court found two (2) enhancement factors would apply: (1) that the appellant had a previous history of criminal convictions, Tenn. Code Ann. § 40-35-114(1); and (2) that the appellant committed the present offense while she was on probation, Tenn. Code Ann. 40-35-114(13)(C). In mitigation, the appellant presented evidence that she suffered from seizures and proposed that these seizures constituted a "physical condition that significantly reduced [her] culpability for the offense." Tenn. Code Ann. § 40-35-113(8). However, the trial court rejected this mitigating factor due to the lack of evidence that the offenses committed were related to her physical condition. As a result, the trial court imposed sentences of one (1) year and three (3) months and one (1) year and two (2) months for the appellant's convictions for reckless endangerment. The trial court further imposed a sentence of six (6) months for the appellant's conviction for harassment.

The trial court found that because the instant offenses were committed while the appellant was on probation, her sentences for both counts of reckless endangerment should run consecutively to one another. The court found that the sentence for harassment should run concurrently with the appellant's convictions in Counts One and Two.

With regard to alternative sentencing, the trial court noted that measures less restrictive than confinement had been recently applied unsuccessfully to the appellant. Significantly, the court observed that the appellant was on probation for an assault committed upon Loretta Norman, one of the victims in the instant case. Furthermore, the trial court determined that granting probation would diminish the seriousness of the offenses committed. Therefore, the trial court denied probation and ordered that the appellant serve her sentences in confinement.

### C. Excessive Sentences

The appellant contends that the trial court imposed excessive sentences for her convictions for reckless endangerment in Counts One and Two.[4] Specifically, she argues that the trial court misapplied Tenn. Code Ann. § 40-35-114(13) and failed to apply her proposed mitigating factor. Thus, she claims that she is entitled to the minimum sentence of one (1) year for the Class E felony.

### 1. Tenn. Code Ann. § 40-35-114(13)

The appellant claims that the trial court misapplied Tenn. Code Ann. § 40-35-114(13) because she was on probation for a misdemeanor, not a felony, at the time the instant offenses were committed. We agree. Tenn. Code Ann. § 40-35-114(13) specifically states that this enhancement factor is applicable if the defendant commits an offense while on release status "if such release is from a prior felony conviction." Because the appellant was on probation for a misdemeanor assault conviction, the trial court improperly applied this enhancement factor.

### 2. Tenn. Code Ann. § 40-35-113(8)

The appellant also maintains that the trial court erred in not applying as a mitigating factor that she suffered from a physical condition, i.e., seizures, which reduced her culpability for the offenses committed. Tenn. Code Ann. § 40-35-113(8). At the sentencing hearing, the appellant testified that she had a seizure on August 3 and suffered from a lapse of memory following the seizure.

The trial court observed at sentencing,

> [t]he defendant wishes her cake and desires to eat it, too. She maintains her innocence before the jury and before the Court today

---

[4] The appellant also makes a conclusory allegation that the trial court imposed an excessive sentence with regard to her harassment conviction in Count Three. Because the appellant has failed to support this allegation with argument, this Court will not address this issue on the merits. Tenn. Ct. Crim. App. R. 10(b).

> even but says well, I could be wrong. I could have had a seizure. I could have had a seizure and it is somehow related to the offense and therefore it is a mitigating factor.

The trial court found that the appellant suffered from a physical condition which caused her to have seizures, but rejected this as a mitigating factor because there was no evidence in the record that the seizures reduced her culpability for the offenses committed. We agree.

Tenn. Code Ann. § 40-35-113(8) is applicable only when the defendant can establish that the mental or physical condition reduced his or her culpability for the offenses committed. Therefore, there must be a causal connection between the condition and the offense. *See* State v. John Walter Whitten, C.C.A. No. 01C01-9803-CR-00106, 1999 Tenn. Crim. App. LEXIS 164, at *2-3, Davidson County (Tenn. Crim. App. filed February 24, 1999, at Nashville); State v. Katherine Irene Warren, C.C.A. No. 01C01-9710-CC-00455, 1998 Tenn. Crim. App. LEXIS 1123, at *5, Bedford County (Tenn. Crim. App. filed October 28, 1998, at Nashville); State v. Mark W. Rawlings, C.C.A. No. 02C01-9612-CR-00475, 1998 Tenn. Crim. App. LEXIS, at *6, Shelby County (Tenn. Crim. App. filed February 10, 1998, at Jackson). There is no evidence in the record that the appellant's seizures are related to her committing the offense of reckless endangerment on August 3. Indeed, at the sentencing hearing, defense counsel acknowledged, "[d]id this physical condition play into the events of this crime? I don't know. We don't have any proof connecting those two."

The trial court's determination that Tenn. Code Ann. § 40-35-113(8) did not apply in mitigation is fully supported by the record.

### 3. Appropriate Length of Sentence

Although the trial court misapplied Tenn. Code Ann. § 40-35-114(13), the appellant is not necessarily entitled to a reduction in her sentence.[5] State v. Lavender, 967 S.W.2d 803, 809 (Tenn. 1998). The trial court did not consider two enhancement factors which are clearly applicable here. First, the appellant's previous conviction for assault estabilshes a history of criminal convictions or behavior above and beyond that necessary to establishe her standard offender range. See. Tenn. Code Ann. Sec. 40-35-114(1). In addition, the use of a firearm justifies enhancement of the appellant's sentence for reckless endangerment. See, Tenn. Code Ann. Sec. 40-35-114(9). Furthermore, there are no mitigating factors which are applicable to the appellant's sentence for reckless endangerment. For her conviction in Count One, the appellant received a sentence of one (1) year and three (3) months, a sentence which is barely above the minimum for a Class E felony. We conclude that the trial court imposed an appropriate sentence of one (1) year and three (3) months for the appellant's conviction for reckless endangerment.

This issue is without merit.

### D. Probation

In her final issue, the appellant contends that the trial court erred in denying probation. She claims that because she has an insignificant criminal history and was convicted of a Class E felony and a Class A misdemeanor, she is presumed to be a favorable candidate for alternative sentencing.

---

[5] Although the trial court found that two (2) enhancement factors were applicable, it indicated that it would be placing weight on only one (1) enhancement factor. The court stated, "if the law permits me, I'm not sure it does, to rely upon both of those enhancing factors, I'm only relying to a great part on one. Makes no difference which one you choose because they are both present . . . But I place great weight upon the enhancing factor I'm relying upon."

An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to eight years or less and who is not an offender for whom incarceration is a priority is subject to alternative sentencing. State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. Id. at 380.

Under the 1989 Sentencing Act, sentences which involve confinement are to be based on the following considerations:

(A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court may consider the enhancement and mitigating factors set forth in Tenn. Code Ann. §§ 40-35-113, 40-35-114 as they are relevant to the § 40-35-103(1) considerations. State v. Boston, 938 S.W.2d at 438; State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The trial court should also consider the defendant's potential for rehabilitation when determining whether an alternative sentence would be appropriate. State v. Zeolia, 928 S.W.2d at 461.

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the

defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995); State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Boggs, 932 S.W.2d 467, 476-77 (Tenn. Crim. App. 1996).

The trial court found that incarceration was appropriate because measures less restrictive than confinement had recently been applied unsuccessfully to the appellant. We agree.

As a result of her striking Loretta Norman in the head with a baseball bat, the appellant was convicted in December 1996 with one (1) count of simple assault and received eleven (11) months and twenty-nine (29) days probation. Notwithstanding a court order to stay away from Loretta Norman, eight (8) months later the appellant fired a shotgun into the door at Robert and Loretta Norman's residence. Obviously, measures less restrictive than confinement have proven unsuccessful, and this reflects poorly on the appellant's rehabilitation potential.

After considering the circumstances of these offenses, along with the appellant's recent unsuccessful effort at rehabilitation, we conclude that the trial court properly found sufficient "evidence to the contrary" to rebut the appellant's presumption for alternative sentencing.[6] The trial court properly denied probation in this case.

This issue is meritless.

---

[6] Because the appellant was convicted of reckless endangerment in violation of Tenn. Code Ann. § 39-13-103, she is ineligible for community corrections under Tenn. Code Ann. § 40-36-106(2).

## CONCLUSION

Because the appellant was improperly convicted of two (2) counts of reckless endangerment arising out of the same criminal conduct, the appellant's conviction for reckless endangerment in Count Two is vacated and merged with the appellant's conviction for reckless endangerment in Count One. However, in all other respects, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
NORMA MCGEE OGLE, JUDGE